UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHERRITA CARTER, individually
and on behalf of all others
similarly situated,**

    **Plaintiff,**

v.                                        **CASE NO.: 8:20-cv-1381-T-02JSS**

**SOUTHWEST AIRLINES CO.
BOARD OF TRUSTEES,**

    **Defendant.**
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**

Named Plaintiff Cherrita Carter ("Plaintiff"), pursuant to Fed.R.Civ.P. 15(a)(1)(B) and this Court's Order at Doc. 17, files this First Amended Class Action Complaint alleging Defendant, Southwest Airlines Co. Board of Trustees ("Southwest" or "Defendant"), violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide her with a timely COBRA notice that complies with the law. In further support thereof Plaintiff states as:

**BRIEF OVERVIEW**

1.    Federal law requires employers to offer laid off or discharged workers an opportunity to continue health insurance (including dental and vision benefits) at their own expense. This is called "COBRA" coverage, after the Consolidated Omnibus Budget Reconciliation Act of 1985.

2. Importantly, an employer has 44 days after the end of a person's employment to provide notice and essential details, a critical deadline Defendant failed to meet here. *See* 29 U.S.C. §1166(a)(2), (a)(4), (c).

3. Plaintiff, on behalf of herself and the putative classes identified herein, brings this putative class action against Defendant for violating COBRA's election-notice informational and timeliness requirements. Defendant, the plan administrator of the Southwest Welfare Benefit Plan, violated COBRA by failing to -- within 44 days of a qualifying event -- provide participants and beneficiaries in the Plan with an adequate election notice, as required by COBRA.

4. When Defendant's COBRA notice was finally provided to Plaintiff (attached as Exhibit B), it omitted critical pieces of information, including the date she experienced a qualifying event, and also lacked basic information like the name of the Plan, or even the Plan Administrator, in violation of COBRA. As a result of Defendant's COBRA notice violations, Plaintiff seeks to have two separate class certified:

**Class # 1: The Untimely COBRA Notice Class**:

>All participants and beneficiaries in the Defendant's Health Plan in the United States who were entitled to be provided notice of their COBRA rights due to a qualifying event pursuant to 29 U.S.C. §1163(a)(1), (2) and(4) and who were not provided a COBRA notice in the timeframe mandated by 29 U.S.C. §1166, within the applicable statute of limitations

**Class # 2: The Deficient COBRA Notice Class**:

>All participants and beneficiaries in the Defendant's Health Plan in the United States who were sent a COBRA notice by Defendant in the form attached as Exhibit B, during the applicable statute of limitations period, as a result of a qualifying event as determined by Defendant, who did not elect continuation coverage.

5. Despite having access to the Department of Labor's Model COBRA form, a copy of which is attached as Exhibit A, Defendant chose not to use the model form—presumably to save Defendant money by pushing terminated employees away from electing COBRA.[1]

6. The deficient and untimely COBRA notice at issue in this lawsuit both confused and misled Plaintiff. It also caused Plaintiff economic injuries in the form of lost health insurance and unpaid medical bills, as well as informational injuries.

7. Defendant, the plan administrator of the Southwest Welfare Benefit Plan ("Plan"), has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

8. Defendant's COBRA notice and process violates the law. Rather than including all information required by law in a timely, single-notice, written in a manner calculated to be understood by the average plan participant, Defendant's COBRA notification process instead offers only part of the legally required information in an untimely manner.

9. As a result of the untimely and deficient COBRA enrollment notice, Plaintiff failed to understand the notice and, thus, Plaintiff could not make an informed decision about her health insurance and lost health coverage.

---

[1] In fact, according to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend that this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." *Health Insurance Continuation Coverage Under COBRA*, Congressional Research Service, Janet Kinzer, July 11, 2013.

10. Because of Defendant's untimely and deficient COBRA enrollment notice, Plaintiff suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage for her and her three children. In addition to a paycheck, health insurance is one of the most valuable things employees get in exchange for working for an employer like Defendant. Insurance coverage has a monetary value, the loss of which is a tangible and an economic injury.

11. And, not only did Plaintiff lose her insurance coverage, after Plaintiff lost her insurance she incurred medical bills resulting in further economic injury. She also refrained from seeking needed medical treatment because she no longer had insurance coverage.

12. Defendant's deficient and untimely COBRA notice also caused Plaintiff an informational injury when Defendant failed to provide her with information to which she was entitled to by statute, namely a timely -- and compliant -- COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the class members she seeks to represent by failing to provide all information in its notice required by COBRA.

13. As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION, VENUE, AND PARTIES

14. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

15. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2). Additionally, ERISA § 502(e)(2) provides that venue is proper "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Because the breach at issue took place in this District, venue is also proper.

16. Plaintiff is a former employee of Defendant. She was covered under Defendant's Health Plan, making her a participant/beneficiary under the Plan.

17. Plaintiff experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering her a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

18. Defendant is a foreign corporation but is registered to do business in the State of Florida. Defendant employed more than 20 employees who were members of the Plan in each year from 2012 to 2018.

19. Defendant is the Plan sponsor/administrator within the meaning of 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

## **CLASS ALLEGATIONS**

### *COBRA Notice Requirements*

20. The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

21. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

22. Notice is of enormous importance, and Notice must be provided in no later than 44 days. 29 CFR § 2590.606-4(b)(2). The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage.

23. Moreover, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well.

24. COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

25.     To facilitate compliance with notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. A copy of this Model Notice is attached hereto as Exhibit A.  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

26.     In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1).

27.     In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).  Such is the case here.  Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Was Late, Is Inadequate, and Fails to Comply with COBRA*

28.     Plaintiff experienced a qualifying event on or about May 8, 2019.

29.     Defendant failed to mail her COBRA notice until August 6, 2019, well beyond the deadline for it to be provided.

30.     As a result, from May 9, 2019 through August 6, 2019 Plaintiff and her three children covered under Southwest health insurance had zero opportunity to elect COBRA continuation coverage.

31. During this period of time Plaintiff incurred medical bills as a direct result of Defendant's failure to offer them COBRA continuative coverage. And, Plaintiff refrained from seeking medical treatment during this period of time because she no longer had insurance coverage.

32. When the notice was finally provided, Defendant only partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. Among other things:

   a. **Defendant's COBRA form violates 29 C.F.R. § 2590.606-4(b)(2)(ii) because it fails to include the date on which the qualifying event occurred;**

   b. **Defendant's COBRA form violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits, including the Plan Administrator;**

   c. **Defendant's COBRA form violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name of the plan; and, finally,**

   d. **Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.**

33. Defendant's COBRA notice confused Plaintiff and resulted in her inability to make an informed decision as to electing COBRA continuation coverage. In fact, Plaintiff did not understand the notice and, further, Plaintiff was unable to elect COBRA because of the confusing and incomplete COBRA notice.

34. As a result, Plaintiff could not make an informed decision about her health insurance and lost health coverage.

### *Plaintiff Cherrita Carter*

35. Named Plaintiff Cherrita Carter is a former employee of Southwest Airlines.

36. She began working for Defendant in December of 2008, until her termination on or about May 8, 2019. She was not fired for gross misconduct.

37. Following her termination, Defendant failed to provide her with any COBRA notice within the deadline to do so.

38. Contrary to Defendant's Motion to Dismiss (Doc. 12), Plaintiff expressly denies having received the COBRA notice dated May 13, 2019 ("the May 2019 notice"). (*See* attached Sworn Declaration of Plaintiff, ¶¶ 3-4).

39. Plaintiff did not receive a copy of the May 2019 Southwest COBRA notice in the mail. (*See* attached Sworn Declaration of Plaintiff, ¶¶ 3-4). In fact, Plaintiff had never seen it before it was filed by Defendant as an attachment to its Motion to Dismiss. (*See* attached Sworn Declaration of Plaintiff, ¶¶ 3-4).

40. Defendant's failure to provide her with a timely COBRA notice is likely related to the filing by Plaintiff of an internal grievance relating to her termination.

41. Because she was a member of the Southwest Union, specifically the Transport Workers' Union Local 555 ("the Union") Plaintiff appealed her termination via the Union's internal grievance process.

42. In a letter dated August 5, 2019 the Union determined it would not be moving forward with Plaintiff's grievance as to her termination.

43. The next day, August 6, 2019, Southwest mailed Plaintiff the COBRA notice attached hereto.  Southwest claims this was the "second" COBRA notice it mailed Plaintiff, but it was actually the first.

44. The August 6, 2019 COBRA notice was late, missing information, confusing, and caused Plaintiff and her children to lose health insurance coverage.  (*See* attached Sworn Declaration of Plaintiff, ¶ 5).

45. Plaintiff incurred medical bills afterwards as a result due of medical treatments my son underwent following my termination.  (*See* attached Sworn Declaration of Plaintiff, ¶ 6).  She also refrained from seeking medical care, despite needing it, because she and her children no longer had insurance coverage.  (*Id*.).

46. The above-identified missing pieces of information mandated by 29 C.F.R. § 2590.606-4 interfered with Plaintiff's ability to elect continuation coverage.

47. In fact, by not receiving a timely COBRA notice Plaintiff was deprived of the ability to elect COBRA coverage at all following her termination, although she both needed and wanted it.  For example, she need it because of her son's hospitalization which occurred shortly after termination.

48. Not only that, Plaintiff also refrained from seeking medical treatment because Defendant's failed to provide her with a timely COBRA notice offering continuation coverage.

49. Defendant has in place no administrative remedies Plaintiff was required to exhaust prior to bringing suit.

50. Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

51. Plaintiff suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage, due to Defendant's deficient COBRA election notice.

52. Additionally, after Plaintiff lost her health insurance she suffered further injury when she refrained from seeking medical treatment – despite having an illness requiring medical treatment – because she lost her health insurance due to Defendant's deficient COBRA notice.

53. Plaintiff both wanted to and attempted to elect continuing health care coverage for her and her children but was unable to do so because of Defendant's late COBRA notice, and also because of the missing information and confusing nature of the Southwest COBRA notice.

54. Additionally, Plaintiff attempted to timely exercise her right to enroll in COBRA, but was unable to do so because, for example, she had never received a timely COBRA notice prior to August 6, 2019.

55. When she did finally receive a notice, it failed to include the date of her qualifying event as required by law. This omission is particularly problematic for Plaintiff in light of the purported "multiple" COBRA notices Defendant claims to have sent.

56. It is entirely unclear based on the two COBRA Defendant claims to have sent whether it claims Plaintiff experienced a qualifying event in May of 2019 (her original termination), or in August of 2019 when the Union rejected her grievance. This is precisely why the law requires inclusion of the qualifying event date in notices: so plan participants, like Plaintiff here, are not forced to guess as to the date for this critical deadline.

57. The August 2019 COBRA notice also failed to include the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits, Southwest Airlines Co. Board of Trustees, or even the name of the plan.

58. Without this basic information, like the plan's name, the plan administrator's name, address, and telephone number, Defendant's notice is not sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

59. Finally, Plaintiff suffered an informational injury as a result of Defendant's COBRA notice because she was not provided all information to which she was entitled by 29 C.F.R. § 2590.606-4(b).

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following two separate putative classes:

**Class # 1: The Untimely COBRA Notice Class**:

> All participants and beneficiaries in the Defendant's Health Plan in the United States who were entitled to be provided notice of their COBRA rights due to a qualifying event pursuant to 29 U.S.C. §1163(a)(1), (2) and(4) and who were not provided a COBRA notice in the timeframe mandated by 29 U.S.C. §1166, within the applicable statute of limitations

**Class # 2: The Deficient COBRA Notice Class**:

> All participants and beneficiaries in the Defendant's Health Plan in the United States who were sent a COBRA notice by Defendant in the form attached as Exhibit B, during the applicable statute of limitations period, as a result of a qualifying event as determined by Defendant, who did not elect continuation coverage.

61. No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class.   Even if they did, any efforts related to exhausting such non-existent remedies would be futile.

62. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

63. <u>Typicality</u>: Plaintiff's claims are typical of the Class.  The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

64. <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class members, she has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

65. <u>Commonality:</u> Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a. Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

    b. Whether Defendant's COBRA notice was timely;

    c. Whether Defendant's COBRA notice complied with the requirements of 29  U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

  d. Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

  e. The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

  f. Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

66. Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

67. Plaintiff intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party COBRA administrator.

**CLASS CLAIM I FOR RELIEF**
*Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4*

68. The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

69. Defendant is the plan sponsor and plan administrator of the Plan and was subject to the continuation of coverage and notice requirements of COBRA.

70. Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

71. On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice in the form attached hereto.

72. The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above (among other reasons).

73. These violations were material and willful.

74. Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## **PRAYER FOR RELIEF**

*WHEREFORE*, Plaintiff, individually and on behalf of the Class, pray for relief as follows:

    a. Designating Plaintiff' counsel as counsel for the Class;

    b. Issuing proper notice to the Class at Defendant's expense;

    c. Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    d.    Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

    e.    Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

    f.    Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

    g.    Granting such other and further relief, in law or equity, as this Court deems appropriate.

    h.    Designating Plaintiff's counsel as counsel for the Class;

    i.    Issuing proper notice to the Class at Defendant's expense;

    j.    Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    k.    Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

    l.    Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

    m.    Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

   n.  Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 14th day of September, 2020.

               Respectfully submitted,

               */s/ Brandon J. Hill*
               **LUIS A. CABASSA**
               Florida Bar Number: 053643
               Direct No.: 813-379-2565
               **BRANDON J. HILL**
               Florida Bar Number: 37061
               Direct No.: 813-337-7992
               **WENZEL FENTON CABASSA, P.A.**
               1110 North Florida Ave., Suite 300
               Tampa, Florida 33602
               Main No.: 813-224-0431
               Facsimile: 813-229-8712
               Email: lcabassa@wfclaw.com
               Email: bhill@wfclaw.com
               Email: gnichols@wfclaw.com

               and

               **CHAD A. JUSTICE**
               Florida Bar Number: 121559
               **JUSTICE FOR JUSTICE LLC**
               1205 N Franklin St
               Suite 326
               Tampa, Florida 33602
               Direct No. 813-566-0550
               Facsimile: 813-566-0770
               E-mail: chad@getjusticeforjustice.com

               *Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of September, 2020, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all parties and/or counsel of record.

 */s/ Brandon J. Hill*
 **BRANDON J. HILL**