UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERRITA CARTER,
individually and on behalf of all others
similarly situated

       Plaintiffs,

v.                                                                         Case No. 8:20-cv-1381-T-02JSS

SOUTHWEST AIRLINES CO.
BOARD OF TRUSTEES

       Defendant.
_____/

**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE**

This matter comes before the Court on Defendant Southwest Airlines Co. Board of Trustee's Motion to Dismiss, Dkt. 28, Plaintiff Cherrita Carter's Amended Complaint, Dkt. 21. Plaintiff brings a putative class action accusing Defendant of violating the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") by failing to provide timely and proper notice of the right to continue health insurance coverage after a qualifying event. Defendant moves to dismiss the action for lack of standing and failure to state a claim. Dkt. 28. Plaintiff filed a response, Dkt. 37, and the U.S. Department of Labor filed an amicus brief, Dkt. 29. The Court held a hearing on October 28, 2020. Dkt. 39. With the benefit

of full briefing and oral argument, the Court grants Defendant's motion to dismiss without prejudice.

## BACKGROUND

Plaintiff Cherrita Carter worked at Southwest Airlines for eleven years. Dkt. 21 at 9. During that time, she maintained health insurance through Southwest's employee health plan. *Id.* at 7. This insurance covered Plaintiff and her three children. *Id.* Plaintiff was also a member of the Transport Workers' Union Local 555. *Id.* at 9.

Southwest fired Plaintiff on May 8, 2019. *Id.* at 9. Although Plaintiff does not say why she was terminated, she says it was not for gross misconduct. *Id.* Defendant says it sent Plaintiff a COBRA election notice on May 14, 2019 ("the May Notice")—just six days after her termination. Dkt. 28 at 3. Plaintiff denies ever receiving a copy of the May Notice. Dkt. 21 at 9. She filed a sworn declaration with the Court saying she had never seen the May Notice before Defendant filed it as an attachment to its Motion to Dismiss. Dkt. 21-3.

Plaintiff challenged her termination through the labor union's internal grievance process. Dkt. 21 at 9. Importantly, this allowed Plaintiff to maintain her employee healthcare benefits while the grievance process was pending. Defendant sent Plaintiff a letter on May 23, 2019, notifying her that she would not lose her

employee healthcare coverage until the resolution of the union grievance. Dkt. 28 at 8; Dkt. 28-1 at 15. Specifically, the letter explained:

> **According to your Collective Bargaining Agreement, if a termination is grieved, your Southwest Airlines benefits will be continued until all grievance procedures have been exhausted and a final decision has been made.** If you are enrolled in a benefit requiring payroll deduction, those deductions must be paid during the grievance process. This includes all medical, dental, vision, optional life and accidental death and dismemberment (AD&D). Failure to make payments within 30 days from the date of this letter will result in the discontinuation of your benefits. This notice will amend your original COBRA notice and election forms you may have received. **You are not required to make a COBRA election at this time due to your grievance process.**

*Id.* (emphasis added).

The union ultimately rejected Plaintiff's grievance on August 5, 2019. Dkt. 21 at 9. This led to the termination of Plaintiff's employee health insurance through Southwest.

Defendant sent Plaintiff a COBRA notice one day later on August 6, 2019 (the "August Notice"). *Id.* at 10. Plaintiff acknowledges that she received this notice. *Id.* Nevertheless, Plaintiff claims the August Notice is deficient because it was late, it lacked essential information, and it confused her. *Id.*

Plaintiff filed this putative class action in June, Dkt. 1, and later filed an Amended Complaint in September, Dkt. 21. Plaintiff alleges Defendant violated COBRA by failing to provide timely and proper notice of her right to elect COBRA coverage. Dkt. 21. Plaintiff says Defendant's alleged violations caused

3

her to lose insurance coverage and incur significant medical bills, including bills from her son's hospitalization, which occurred "shortly after her termination." *Id.* at 10. Plaintiff also claims this coverage lapse led her to refrain from seeking medical care, despite needing it. *Id*. Plaintiff seeks monetary damages, attorneys' fees, and an injunction barring Defendant from using the defective notice and also requiring Defendant to mail corrective notices. *Id.* at 16. Defendant presents two arguments why the Amended Complaint should be dismissed: (1) Plaintiff lacks standing under Article III because she failed to establish a concrete injury-in-fact and causation, and (2) Plaintiff failed to state a claim under Rule 12(b)(6) because the notice substantially complies with the applicable laws and regulations. Dkt. 28.

## LEGAL STANDARD

A motion to dismiss for lack of standing challenges subject-matter jurisdiction pursuant to Rule 12(b)(1). *See Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003). There are two types of challenges against subject-matter jurisdiction: "facial" and "factual." *Makro Cap. of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). A facial attack challenges subject-matter jurisdiction based on the allegations in the complaint. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). A factual attack challenges just that: the facts that allegedly support subject-matter jurisdiction. *Makro Cap.*, 543 F.3d at 1258. For factual attacks, courts may consider extrinsic evidence, such as affidavits and testimony.

*Id.* "Since such a motion implicates the fundamental question of a trial court's jurisdiction, a 'trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case' without presuming the truthfulness of the plaintiff's allegations." *Id.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), set forth in "numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must also view the complaint in the light most favorable to the plaintiff and resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court accepts Plaintiff's factual allegations as true at this stage. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## DISCUSSION

The Court agrees that Plaintiff has failed to establish standing for most of her claims and that the other claims do not pass muster under Rule 12(b)(6). To establish standing, a plaintiff must demonstrate: (1) she suffered an "injury-in-fact"; (2) there is a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury-in-fact must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Id.* at 560. At issue here is whether Plaintiff established a concrete injury, and if she did, whether she established that Defendant's COBRA violations caused this injury.

The Eleventh Circuit recently issued an en banc decision that guides this analysis. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020). In that case, the court reiterated that a bare procedural violation of a statute is not enough to show concrete harm. *Id.* at 924; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (holding that a "bare procedural violation, divorced from any concrete harm" is not enough to support standing). Instead, a plaintiff must establish one of two things: (1) that the statutory violation resulted in actual harm—whether tangible or intangible; or (2) the violation "posed a material risk of harm to the plaintiff." *Godiva*, 979 F.3d at 928. If the answer to both of these

inquires is no, the plaintiff failed to establish standing. *Id.* Courts cannot "'imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none,' and [courts] are powerless to 'create jurisdiction by embellishing a deficient allegation of injury.'" *Id.* at 925 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000)).

Keeping in mind these lessons from *Godiva*, the Court will now address Plaintiff's specific allegations.

### I.     Plaintiff Has Not Established Standing For Her Timeliness Claim.

Plaintiff first claims Defendant failed to provide timely notice of her COBRA election rights. Dkt. 21 at 12. COBRA allows employees and their dependents to extend health coverage under an employer's group health plan when coverage would otherwise be lost due to a "qualifying event." One type of qualifying event is termination of employment for reasons other than gross misconduct. *See* 29 U.S.C. § 1163(2). The employer must notify its healthcare administrator of the employee's termination within 30 days, *id.* § 1166(a)(2), and the administrator then must notify the employee of her continuation right within 14 days, *id.* § 1166(a)(4)(A), (c). If a terminated employee does not receive notice of her COBRA rights, she may file a civil action to enforce her rights. § 1132(a).

Here, Plaintiff claims Defendant violated this provision by failing to send a COBRA notice until August 6, 2019—90 days after her termination. Dkt. 21 at 9–10. She claims this untimeliness caused her to suffer both economic and informational injuries. Dkt. 37 at 8–14.

The Court holds that Plaintiff has failed to allege a concrete economic injury here. In the Amended Complaint, Plaintiff makes it appear as though she lost her healthcare benefits immediately after her termination on May 8, 2019. For example, she claims she needed COBRA to cover costs for the hospitalization of her son, which "occurred shortly after termination." Dkt. 21 at 10. Yet, in reality, Plaintiff already *had* healthcare coverage during this period. She maintained employee health insurance through Southwest until at least August 5, 2019—when the union rejected her grievance and upheld her termination. In fact, this coverage was likely cheaper than any coverage she would have received under COBRA.

These facts make several of Plaintiff's claims implausible. For example, she says she "attempted to timely exercise her right to enroll in COBRA, but was unable to do so because . . . she had never received a timely COBRA notice prior to August 6, 2019." Dkt. 21 at 11. But Plaintiff had no need to enroll in COBRA until at least August 5. Plaintiff also says Defendant's untimeliness caused her to refrain from seeking medical care during this period. Dkt. 21 at 8. But why would Plaintiff refrain from seeking medical care during a period when she already *had*

healthcare coverage? As such, it is unclear what economic injury Plaintiff could have suffered here or how Defendant's untimeliness could have created a material risk of economic harm. *See Godiva*, 979 F.3d at 928. The claim therefore cannot stand on this basis.

Plaintiff has also failed to establish an informational injury here. She claims she did not receive a COBRA notice until August 6, 2019. Dkt. 21 at 10. Yet the record shows that Defendant sent Plaintiff a COBRA notice on May 14, 2019.[1] Dkt. 28-1 at 3. Although Plaintiff now "expressly denies" ever receiving the May Notice, this conclusory statement does not negate written evidence. *See Larsen v. Citibank FSB*, 871 F.3d 1295, 1307 (11th Cir. 2017). Moreover, the applicable standard is not whether the beneficiary actually received the COBRA notice; it is whether the plan administrator sent the notice using methods that are "reasonably calculated" to reach plan participants, such as sending the notice by first-class mail. *See* 29 C.F.R. § 2520.104b-1(b)(1); *see also DeBene v. BayCare Health Sys. Inc.*, 688 F. App'x 831, 839 (11th Cir. 2017).

Plaintiff has also failed to establish why she needed this information in the first place. As just explained, Plaintiff already had health insurance during this

---

[1] Plaintiff did not include the May Notice in her pleadings. However, the Court can properly consider the May Notice because it impacts Plaintiff's Article III standing and the Court's subject-matter jurisdiction. *See Makro Capital*, 543 F.3d at 1258.

period. She would not lose this coverage until the resolution of her union grievance. Indeed, Defendant sent Plaintiff a letter on May 23, 2019, stating:

> [Y]our Southwest Airlines benefits will be continued until all grievance procedures have been exhausted and a final decision has been made . . . You are not required to make a COBRA election at this time due to your grievance process. [2]

Dkt. 28 at 8. It is thus unclear how Plaintiff could be injured by a lack of information about COBRA during a period when she had no need to elect COBRA coverage. And although Plaintiff is correct that—at the pleading stage of a case—general factual allegations of injury can suffice, *see Lujan*, 504 U.S. at 561, this is not a free pass around Article III. General factual allegations must still "plausibly and clearly allege a concrete injury." *Thole v. U.S. Bank NA*, 140 S. Ct. 1615, 1621 (2020); *see also Iqbal*, 556 U.S. at 678–79. Plaintiff has not met this burden, and this claim must therefore be dismissed.

## II.     Plaintiff's Allegations About Informational Deficiencies Also Fail.

Next, Plaintiff claims the August Notice was informationally deficient in four ways: (1) it did not include the date the qualifying event occurred; (2) it failed to include "the name of the plan"; (3) it failed to include "the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits, including the Plan Administrator"; and (4) it was

---

[2] The Court can properly consider this letter—despite it not appearing within the pleadings—because it impacts the Court's subject-matter jurisdiction. *See Makro Cap.*, 543 F.3d at 1258.

10

not "written in a manner calculated to be understood by the average plan participant." Dkt. 21 at 8. For the reasons explained below, the Court dismisses the first and third claims under Rule 12(b)(6) for failure to state a claim, and the second and fourth claims under Rule 12(b)(1) for lack of standing.

### A. Date of the Qualifying Event

Plaintiff claims the August Notice violates 29 C.F.R. § 2590.606-4(b)(2)(ii) because it does not include the date on which the qualifying event occurred. *Id.* Section 2590.606-4(b)(2)(ii) regulates when a COBRA notice must be sent. It applies only when the employer also serves as the plan administrator. *See* § 2590.606-4(b)(2)(ii).

Here, Plaintiff alleges that Southwest Airlines Co. Board of Trustees is the plan administrator, *id.* at 3, but she does not allege it was her previous employer. Plaintiff therefore has not established that § 2590.606-4(b)(2)(ii) applies here.

Moreover, Plaintiff seemingly bases this claim on a misreading of the regulation. Section 2590.606-4(b)(2) does not regulate what substantive information must be included in a COBRA notice. Instead, it simply regulates *when* a plan administer/employer must send notice. Section 2590.606-4(b)(2)(ii) requires a plan administer/employer to send notice forty-four days after the date of the qualifying event; it does not require that the notice itself include that date. Plaintiff may have conflated § 2590.606-4(b)(2) with § 2590.606-4(b)(4)—the

11

provision that regulates what substantive content must be included in COBRA notices. Importantly, § 2590.606-4(b)(4) does not require plan administers/employers to include the specific date on which the qualifying event occurred. No such requirement appears anywhere in these provisions. As such, Plaintiff has failed to state this claim.

### B. Name of the Plan

COBRA election notices must identify "[t]he name of the plan under which continuation coverage is available." 29 C.F.R. § 2590.606-4(b)(4)(i). Plaintiff claims Defendant violated this provision by failing to include the formal name of Southwest's plan: "Southwest Airlines Co. Health and Welfare Benefit Plan." Dkt. 21 at 8. Instead, the August Notice included only the name "Southwest Airlines (c/o Businessolver, Inc.)." Dkt. 21-2.

Plaintiff has failed to establish an injury-in-fact and causation here. The information Plaintiff desires is readily identifiable: the August Notice clearly relates to her termination from Southwest Airlines, and it clearly deals with COBRA coverage. Plaintiff does not explain why the failure to include the words "Health and Welfare Benefit Plan" harmed her or how it interfered with her ability to elect COBRA coverage. Without more, this allegation is a "bare procedural violation, divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549. Plaintiff must support this claim by showing either some harm caused by the violation or a

12

material risk of harm. Without establishing this, her claim cannot stand. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998–1000 (11th Cir. 2020) (finding two recipients of allegedly misleading debt collection letters lacked Article III standing because they did not establish an injury-in-fact or causation for the FDCPA claims).

### C. Name of the Plan Administrator

Plaintiff next alleges the August Notice is deficient because it does not provide contact information for the "plan administrator." Dkt. 21 at 8. COBRA notices must include "the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits." § 2590.606-4(b)(4)(i). Here, the "party responsible for administration of the plan's continuation coverage benefits" is Southwest Airlines (c/o Businessolver, Inc.). The parties do not dispute that the August Notice contained the contact information for this entity. But Plaintiff takes this one step further: she argues § 2590.606-4(b)(4)(i) also requires the inclusion of the contact information for the "plan administrator," which in this case is Defendant Southwest Airlines Board of Trustees. Dkt. 37 at 15.

The Court disagrees. The regulation's plain language does not support this argument. Section 3(16)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA") defines a plan's "administrator" as:

13

  (i)  the person specifically so designated by the terms of the instrument under which the plan is operated;
  (ii)  if an administrator is not so designated, the plan sponsor; or
  (iii)  in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). This statutory definition is not cited in § 2590.606-4(b)(4)(i). In fact, nowhere in § 2590.606-4(b)(4)(i) does the term "plan administrator" even appear. Plaintiff's counsel conceded this point at oral argument.[3] Mot. Hr'g Tr. 25–26, *see* Dkt. 41. Nevertheless, Plaintiff argues the term "plan administrator" should be imputed into the regulation based on prior case law—namely, *Riddle v. PepsiCo, Inc.*, 440 F. Supp. 3d 358 (S.D.N.Y. 2020), and *Bryant v. Wal-Mart Store, Inc.*, No. 16-24818, 2019 WL 3542827 (S.D. Fla. Apr. 18, 2019).

  The Court declines to do so for several reasons. First, this Court is not required to follow decisions made by other district courts. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (noting that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same

---

[3] The following exchange occurred at oral argument:
  THE COURT: All right. Okay. Now, why do you say they're required to list the plan administrator? . . . The question is, where in the regs does it say that? And the answer is, Judge, it ain't in there, right?
  MR. HILL: Judge, it ain't in there, Judge.

14

judicial district, or even upon the same judge in a different case" (quoting 18 J. Moore *et al.*, Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011))).

Second, the plain language of the regulation does not support it. As stated above, the term "plan administrator" does not appear in the provision at issue. It is a well-known canon of construction that courts should not insert omitted terms into plainly written text. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419–21 (2014). Moreover, terms like "the administrator of the plan" and "the administrator" explicitly appear in other portions of the applicable regulations, making the absence of such language in § 2590.606-4(b)(4)(i) more noticeable. *See, e.g.*, § 2590.606-4(a) ("the administrator of a group health plan"); § 2590.606-4(b)(1) and (c)(1)–(2) ("the administrator"); § 2590.606-4(b)(2), (d)(1) ("the administrator of the plan"). Another well-known canon of construction cautions that "terms carefully employed . . . in one place, and excluded in another, should not be implied where excluded." *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 716 F.2d 92, 96 (2d Cir. 1983) (citing *FTC. v. Sun Oil Co.*, 371 U.S. 505, 514–15 (1963)). The Court will heed this instruction.

Third, guidance issued by the Secretary of Labor supports this reading. In the preamble to the notice of the final regulation, the Secretary explicitly listed "persons specializing in COBRA administration" separately from "plan administrators." Health Care Continuation Coverage, 69 Fed. Reg. 30084, 30084

15

(May 26, 2004) (to be codified at 29 C.F.R. § 2590.606-1 to -4). The Secretary went on to explain that "most plan administrators *and* COBRA administrators have developed procedures to comply with [COBRA]" and that the regulation "provide[s] additional, detailed guidance . . . [for] plan administrators *and* COBRA administrators[.]" *Id.* at 30096 (emphasis added). Moreover, the model election notice attached to the final regulation instructs parties to include "the Plan Administrator *or* other party responsible for COBRA administration under the Plan" as a plan participant's point of contact. *Id.* at 30111 (emphasis added). These examples show the Secretary of Labor uses the two terms differently, undermining Plaintiff's argument that "plan administrator" should be read into the regulation.

Finally, this interpretation makes sense from a practical standpoint. Although it is possible for the "plan administrator" to also be the "party responsible . . . for the administration of continuation coverage benefits," this is not the norm. *See* 69 Fed. Reg. at 30094 ("[M]ost COBRA administration is accomplished through the purchase of services[.]"). Most businesses—especially large businesses like Southwest Airlines—delegate this role to third parties, as is authorized under ERISA. *See* 29 U.S.C. § 1105(c)(1)(B) (stating that the plan document may expressly authorize "named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities"). In fact, one study found that over 77 percent of large companies delegate this task to third-party

16

administrators. *See* C. Hirschman, *Sending COBRA Off to the Experts*, HR Magazine (Mar. 1, 2006), https://www.shrm.org/hr-today/news/hr-magazine/pages/0306srhirschman.aspx. Thus, because the two terms often refer to two separate parties, this Court will not conflate the terms in its reading of § 2590.606-4(b)(4). For these reasons, Plaintiff has failed to state this claim.

### D. Whether the Notice was Written in a Manner that an Average Plan Participant Could Understand.

Last, Plaintiff argues the August Notice violates 29 C.F.R. § 2590.606-4(b)(4) because it is not written "in a manner calculated to be understood by the average plan participant." Dkt. 21 at 8. The Eleventh Circuit has "not directly addressed what an employer must do to satisfy its notification obligations under COBRA[.]" *DeBene*, 688 F. App'x at 839. Nevertheless, the notice must be sufficient to permit the discharged employee to make an informed decision whether to elect COBRA coverage. *See Meadows ex rel. Meadows v. Cagle's, Inc.*, 954 F.2d 686, 692 (11th Cir. 1992).

Here, the Amended Complaint alleges many conclusions but is light on facts. Plaintiff says the August Notice "confused [her] and resulted in her inability to make an informed decision as to electing COBRA continuation coverage." Dkt. 21 at 8. Yet Plaintiff never explains how or why the notice confused her. She does not point to any confusing statements in the notice itself or any omissions that could have cured the alleged deficiencies. She also fails to explain how these

17

alleged deficiencies led to her inability to understand the notice in a way that impeded her decision to elect or not elect COBRA coverage. Although it is premature at this stage to assess the reasonableness of the notice, this is not a free pass around the requirements of Article III. Plaintiff must allege a concrete injury-in-fact and causation to establish standing. *See Godiva*, 979 F.3d at 925 ("We will not 'imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none,' and we are powerless to 'create jurisdiction by embellishing a deficient allegation of injury.'"). Her conclusory statements here do not satisfy this burden. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002))).

## CONCLUSION

The Court **GRANTS** Defendant Southwest Airlines Co. Board of Trustee's Motion to Dismiss (Doc. 28), and the action is **DISMISSED** without prejudice.[4] An amended complaint, if any, must be filed within fourteen (14) days.

**DONE AND ORDERED** at Tampa, Florida, on December 14, 2020.

---

[4] Because the Court largely dismisses Plaintiff's claims on the basis of standing, the dismissal is without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (noting a complaint dismissed for a lack of standing is not a judgment on the merits and therefore should be without prejudice).

18

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record